**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5195-18

RUSSELL GOTTLICK,

    Plaintiff-Appellant,

v.

PLAINFIELD POLICE DIVISION,
CRAIG VENSON, CARL RILEY,
and CITY OF PLAINFIELD,

    Defendants-Respondents.

_____

Submitted December 16, 2020 – Decided April 28, 2021

Before Judges Alvarez and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1300-16.

Yvette C. Sterling, attorney for appellant.

Rainone Coughlin Minchello, LLC, attorneys for respondents (John F. Gillick, on the brief).

PER CURIAM

Plaintiff Russell Gottlick brought suit against defendants City of Plainfield, Plainfield Police Division (Division), Craig Venson, and Carl Riley, under the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -49, alleging deprivation of rights under the New Jersey Constitution, hostile work environment, and retaliation. A first judge granted partial summary judgment, dismissing the complaint with the exception of the hostile work environment claim. That judge also denied the motion for reconsideration which followed. We affirm those decisions.

The first judge concluded that Gottlick did not allege facts establishing age discrimination, retaliation, or a cause of action under the New Jersey Civil Rights Act. The judge noted that despite defendants' legitimate reasons for Gottlick's reassignment, Gottlick's allegations raised sufficient questions of material fact to allow the hostile work environment count to survive. As the judge also noted, Gottlick was merely reassigned, not demoted, and his pay was not reduced. Since no basis for punitive damages was demonstrated, that count was dismissed as well.

The first judge denied the motion for reconsideration because it merely repeated Gottlick's earlier arguments. Defendants' cross-motion for

2

reconsideration with regard to the hostile work environment claim was also denied.

After four days of trial, presided over by a second judge, a jury found that although Venson, Gottlick's supervisor, subjected Gottlick to "unlawful age-related comments," they were not "severe[] or pervasive enough to make a reasonable person of similar age believe that the conditions of the employment were altered, and the working environment was intimidating, hostile, or abusive." Because we conclude some of the trial judge's evidentiary rulings and comments potentially prejudiced the outcome, we vacate and remand for a new trial.

Gottlick, a Plainfield police officer since 1992, worked until April 2015 in the Division's Administrative Bureau for seventeen years. Venson became Gottlick's supervisor in late 2013. The two had a poor relationship, and Gottlick claimed Venson harassed him regarding his age, including by referring to him as a "dinosaur," stating that Gottlick had "been here too long," and comparing him to an old typewriter because he was not fast on the computer.

In November 2014, Gottlick and Venson engaged in a heated argument culminating in a meeting with the Public Safety Director. The Director instructed Gottlick to email him daily regarding his interactions with Venson.

The Director transferred Gottlick to the Alcohol Beverage Commission Unit in the Criminal Investigation Bureau, effective April 1, 2015. Gottlick's compensation did not change. His transfer did not result in a demotion.

On June 15, 2015, Gottlick authored a departmental complaint regarding Venson's conduct towards him, although he did not mention age discrimination. The judge referred to the departmental complaint on the record, but did not admit the document.

In January 2016, Gottlick requested and received a transfer to patrol because he was unhappy with his schedule in the Alcohol Beverage Commission Unit. On April 4, 2016, he filed this complaint against Venson and the Division.

On January 25, 2017, Gottlick retired, but then accepted an assignment from the Director to oversee the police garage, property room, and maintenance workers. On March 1, 2019, Gottlick retired in good standing.

During the trial, the judge repeatedly interjected himself into the questioning of witnesses, commenting critically on the record about counsel both in and outside the presence of the jury. We describe some of these instances in the relevant sections of the opinion. The judge began the week by announcing on the record, presumably in the presence of the parties, although not the jury,

A-5195-18

that he had a scheduled vacation the next Monday, July 17, 2019. The trial ended on Thursday, July 13, 2019.

We set forth Gottlick's points on appeal:

POINT I

WHETHER THE JUDGE'S ACTIONS DURING THE TRIAL OF TAKING CONTROL OF THE TRIAL AND ACTING AS THE ADVOCATE NOT THE JURIST, ADVERSELY AFFECTED THE TRIAL AND LIMITING THE LENGTH OF THE TRIAL, WHICH WAS SCHEDULE [sic] FOR FIVE TO SIX DAYS AND FORCING THE EVIDENCE TO BE HEARD IN A DAY AND HALF [sic] DETRIMENTALLY AFFECTED PLAINTIFF'S CASE.

POINT II

WHETHER THE JUDGE'S DECISION TO NOT PERMIT INTO THE TRIAL EVIDENCE OF DEFENDANTS' JOB ACTIONS TAKEN AGAINST PLAINTIFF AND COMPLAINTS OF HIS MISCONDUCT FOR NO LEGITIMATE BUSINESS REASONS DETRIMENTALLY AFFECTED PLAINTIFF'S ABILITY TO SHOW THAT THE STATEMENTS AND THE CONDUCT COMPLAINED OF WERE PERVASIVE AND SEVERE.

POINT III

APPELLEES' COUNSEL'S CONDUCT DURING DELIBERATION WHICH WAS NOT CURTAILED BY THE JUDGE ADVERSELY AFFECTED PLAINTIFF'S CASE.

POINT IV

PARTIAL GRANTING OF DEFENDANTS' SUMMARY JUDGMENT MOTION DISMISSING PLAINTIFF'S AGE DISCRIMINATION AND RETALIATION COMPLAINTS WAS CLEAR ERROR AND CONTRARY TO CURRENT LAW.

POINT V

WHETHER THE COURT'S REASONING USED IN HIS SUMMARY JUDGMENT RULING REGARDING THE RETALIATION CLAIM WAS TOO NARROW AND DID NOT CONSIDER THE PARTICULAR FACTS OF THIS CASE.

POINT VI

PLAINTIFF'S AGE DISCRIMINATION CLAIM WRONGFULLY DISMISSED.

POINT VII

PLAINTIFF'S RETALIATION COMPLAINT SHOULD NOT HAVE BEEN DISMISSED.

POINT VIII

DISMISSAL OF PLAINTIFF'S PUNITIVE DAMAGES WAS CONTRARY TO CLEAR MANDATES OF THE REMEDIES AVAILABLE UNDER THE NJLAD.

A-5195-18

## I.

We consider Gottlick's appeal of the partial grant of summary judgment to be so lacking in merit as to not warrant much discussion by way of written opinion. R. 2:11-3(e)(1)(E). In order to establish even a prima facie age discrimination case, Gottlick had to identify some evidence in the record demonstrating that his reassignment out of an office where he and the supervisor were in almost daily conflict was a demotion attributable to age. After his transfer, his pay remained the same, as did his hours, although he complained about later shifts. There was no proof of demotion or retaliation.

As a result, Gottlick had no legal basis for punitive damages. There were no material facts in dispute. Gottlick was simply not entitled to relief as a matter of law on the dismissed counts. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536-37 (1995).

## II.

"N.J.R.E. 614 specifically authorizes judges to call or question witnesses 'in accordance with the law and subject to the right of a party to make timely objection.'" State v. Taffaro, 195 N.J. 442, 450 (2008). "As Chief Justice Weintraub observed nearly a half century ago, trial judges are 'imposing figure[s]'; to jurors, they symbolize 'experience, wisdom, and

impartiality.' Therefore, if a judge's questions 'suggest disbelief, the impact upon the jurors may be critical.'" Id. at 451 (citation omitted) (alteration in original). Hence, "[a] trial judge must . . . be cautious not to compromise his or her impartiality by taking over the proceedings and creating prejudicial error." Hitchman v. Nagy, 382 N.J. Super. 433, 451 (App. Div. 2006).

The "standard in reviewing a claim of prejudicial intervention by a trial judge is whether 'it appears [the] trial judge has turned the jury against [a party].'" Id. at 452 (quoting Mercer v. Weyerhaeuser, 324 N.J. Super. 290, 298 (App. Div. 1999)) (second alteration in original). The "scope of review includes considerations of the entire transcript to determine whether 'the conduct of the trial judge toward [counsel] "tended strongly to prejudice the [party] in the eyes of the jury."'" Ibid. (quoting Mercer, 324 N.J. Super at 299). "A trial judge has the ultimate responsibility to control the trial in the courtroom and is given wide discretion to do so." Horn v. Village Supermarkets, Inc., 260 N.J. Super. 165, 175 (App. Div. 1992).

The trial judge began by informing the parties, outside the presence of the jury, that he would be going on vacation the next Monday. That remark, in light of his frequent observations that testimony, and the introduction of evidence,

were too time-consuming, could not have inspired the participant's confidence in the neutrality of the judge's rulings. It created a context for what followed.

Whether due to a concern about time or for some other reason, the judge repeatedly interjected himself in the questioning of witnesses, and at times disparaged counsel in doing so. The interruptions began with opening statement:

> [Gottlick's attorney]: So what happens next? My client --
>
> The Court: Want to bring it to a close, [c]ounsel?
>
> [Gottlick's attorney]: Yes.
>
> The Court: I think you've --
>
> [Gottlick's attorney]: I'm closing right now.
>
> The Court: -- been opening quite long.
>
> [Gottlick's attorney]: Yes, I'm closing right -- yes, I'm sorry, Your Honor. Yes, I will close right now. So then my client then comes to locate an attorney, which is me, and then we --
>
> The Court: This is irrelevant.
>
> [Gottlick's attorney]: This is irrelevant. I'm sorry.
>
> The Court: Okay. At some point, he made a complaint.
>
> [Gottlick's attorney]: He made a complaint.

9

A-5195-18

The Court:  And that's why you're here.

[Gottlick's attorney]:  And that's why we're here, okay? And then at one point, they did do an investigation which you will see later on.  And then that's the first time they actually did any investigation, after the complaint was filed and I'm here.  Thanks, Your Honor.

The judge was unflattering to defense counsel as well, although with far less frequency.  He also interrupted defense counsel's opening statement.

During plaintiff's counsel's direct examination of Gottlick, the judge asked a series of questions.  When counsel resumed, the judge interrupted again, stating that he wanted Gottlick to testify further before he discussed any additional documents.  Shortly after, the judge said:

THE COURT:  Okay.  End your sentence so he can answer.  Okay.

[Gottlick's attorney]:  Yes.

THE COURT:  Thank you.  Go ahead.  Is there anything else that you didn't mention already?

[Gottlick]:  Yes, sir.  It was very difficult to go into work every single day and be berated, being talked down to --

THE COURT:  This has already been testified to.  It's repetitive.

[Gottlick]:  Well, you --

10

THE COURT: No, sir, you already testified to it. And the jurors heard it. I'm not -- you've testified to that. All right. I just don't want you to repeat what you've already said.

As exhibits were identified during Gottlick's testimony before the jury, the judge told Gottlick: "Sir, you really should know your own evidence by this time. We're in trial, we have a jury picked and you're reading this email like you don't know what it is."

The judge admonished Gottlick's counsel when she sought to introduce a particular exhibit, stating "[t]his better not be repetitious of what we've already had." After directing a few additional questions to Gottlick regarding the exhibit, the court continued:

THE COURT: Okay. Do you have any more? It's getting a little repetitious.

[Gottlick's attorney]: Well, I'm -- I -- Your Honor, this is with [plaintiff's Exhibit 6] to put in evidence his duties as related to his duties as an officer. I do think that's relevant or not in terms of -- because that decision's going to be made in regards to not doing his duties. And I think the jury needs to know what his duties are.

THE COURT: You know, this is really getting -- everybody knows that they didn't get along. He's the supervisor, he's giving him a hard time. Is this age discrimination? Was he put into a hostile work environment? I'm not -- I'm not going to allow the next -- what you just offered.

11

[Gottlick's attorney]: Okay, Your Honor.

THE COURT: It is repetitious.

Shortly after, while counsel was organizing exhibits, she and the judge engaged in the following exchange before the jury:

[Gottlick's attorney]: [Plaintiff's Exhibit 6].

THE COURT: Here's what I'm thinking. Okay. The jury doesn't have to waste their time watching you go through papers.

[Gottlick's attorney]: I was just --

THE COURT: And so what I'm thinking about doing is excusing the jury for the day so that all counsel and myself can go over the documents and I can decide what, if any, is still relevant and not repetitive. Okay. I just don't want the jury sitting here and having you rifle through papers to prove your case. You should have -- this should be -- you know, got to go zip, zip, zip, zip. Okay. So what would you like to do?

[Gottlick's attorney]: Your Honor, that would be helpful. And I was actually trying to find my defendant -- I mean, my co-counsel's documents. I wasn't rifling through that. But that would be helpful, Your Honor.

THE COURT: If the documents were properly premarked –

[Gottlick's attorney]: Yes, Your Honor.

12

THE COURT: -- and a copy given to your adversary we wouldn't be having this problem. Do you have any more questions for Sergeant Gottlick that aren't document-related?

[Gottlick's attorney]: Yes, Your Honor.

BY [Gottlick's attorney]:

Q: Sergeant Gottlick, could you tell us, in your own words, what you -- you said you were discriminated against or harassed based on your age. Could you tell do you have any manifestation of that? Do you -- do you understand the question?

THE COURT: I understand the question perfectly, and it's repetitive --

Later, during Gottlick's cross-examination, the court informed the jury: "As you can tell, members of the jury, I'm trying to move the case. And I am tough on the attorneys, but I'm equally tough on both of them, not weighing one against the other. But I do want them to efficiently put the case in front of you."

Gottlick called a friend, Kelvin Brooks, as his witness. Brooks did not complete his answer to Gottlick's counsel's first question:

Q: Could you just tell us exactly what your profession is?

A: I have a secular profession. I'm a public safety tele-communicator for the County Burlington Department of Public Safety. And I'm also the presiding --

13

A-5195-18

THE COURT: This is not relevant. Sorry, this is not relevant. Do you also serve as some kind of pastoral counselor?

[Gottlick's counsel]: That's --

THE WITNESS: Yes. I'm the presiding bishop of the --

THE COURT: Thank you.
THE WITNESS: -- Anglican Church Pentecost.

THE COURT: And that's not relevant either. You're not an expert. He's not being called as an expert. He's being called as a fact witness. I'm sorry, sir. Did you at some point counsel Sergeant Gottlick over some problems he was having with the Plainfield Police Department?

THE WITNESS: Yes.

THE COURT: Tell us about that.

THE WITNESS: Sergeant Gottlick and I have known each other for quite some time and I noticed that there was some difficulty he was having at work after some administrative changes when he took on a new supervisor. And we began to discuss it, and take counsel, which offered him some spiritual support.

THE COURT: Okay. And did you have separate counseling sessions over this? Or was it formal or informal?

THE WITNESS: It was mostly informal.

THE COURT: Okay. But did he seem upset about what was going on at work?

14

THE WITNESS:  Oh, very much so.  Very --

THE COURT:  And did he tell you why?

THE WITNESS: Lieutenant Venson had been appointed as his supervisor in the Administration Bureau.  And he felt as though he was being unfairly singled out.  And the situation for him at work was becoming more difficult, that he was -- I don't know how best to categorize it, but essentially, he was being targeted, if you will.

THE COURT:  All right.  Do you have any more questions?

[Gottlick's counsel]:  Yes.

Q:  Did --

THE COURT:  What else?

Q:  Did -- when you say --

THE COURT:  I'm not sure anything else is going to be relevant.  But what else?

Q:  You said targeted.  Did you -- did you have a discussion with him as to why he felt he was being targeted?

A:  Yes.  He made some comments that, you know, Lieutenant Venson had commented on his -- the way he typed.  And, you know, his speed of getting things done.  And, you know, how long he had been assigned to the Administration Bureau, things like that.  So he felt as though it was, you know, an issue because of his age.

A-5195-18

Q:  Did he ever tell you that he was called any names by Lieutenant Venson, during your counseling session?

A:  I recall once I believe he mentioned something about being [called] a dinosaur.  But I think that's all I can recall.

Q:  Did he ever tell you anything about –

THE COURT:  No, no, no.  That's leading.

[Gottlick's counsel]:  Okay.

THE COURT:  Okay.

Q:  Did anything else that he said to you --

THE COURT:  Is there anything else?

Q:  Is there anything else he said to you, do you recall?

A:  There were a number -- a number of incidents, you know, a number of things that he endured, you know, that made things difficult for him in the Administration Bureau.  Being given an -- given instructions to do one thing and then --

THE COURT:  Okay. Thank you.

Q:  And then --

THE COURT:  That's it.

[Gottlick's counsel]:  Your Honor --

THE COURT:  That's it.

16

[Gottlick's counsel]: -- can we ask him about how he -- might have said to him how he felt about anything, the --

THE COURT: No. That's it.

[Gottlick's counsel]: -- in terms of his emotional --

THE COURT: This is a very limited issue that this person has witnessed. And he's not an expert. Okay. He's not being offered as an expert witness. He's being offered as a fact witness. That's it. Thank you. [Gottlick's counsel], please sit.

Thus, the judge ended Gottlick's direct examination of the witness.

Sua sponte cutting off a witness on the basis of relevance, in front of the jury, obviously conveyed the judge's negative view of the evidence—that the testimony Gottlick was attempting to develop was worthless. That opinion could not have been overlooked by the jury. It conveyed a lack of confidence in the merits of Gottlick's case. See State v. Ray, 43 N.J. 19, 28 (1964).

The third day of trial opened, outside the presence of the jury, with the judge telling Gottlick's counsel this was "the most disorganized presentation of evidence or proposed evidence [he had] ever seen. Half of [the documents were] not marked." Immediately before the jury entered, he added: "Again, if I overlook something, [Gottlick's counsel], you have only yourself to blame . . . . The conduct that you have displayed in the course of this case is just not

17

acceptable in terms of presentation of evidence."  On seven occasions, at times before the jury, the court chided Gottlick's counsel for "mumbling."[1]

During closing arguments, the court interrupted Gottlick's counsel as follows:

> [Gottlick's counsel]:  Under New Jersey [l]aw, there is no requirement for my client to exhaust the internal mechanisms.  He doesn't have to --
>
> THE COURT:  Excuse me.
>
> [Gottlick's counsel]:  Yes?
>
> THE COURT:  Stop instructing on the law.
>
> [Gottlick's counsel]:  Sorry.
>
> THE COURT:  I will instruct the law.  And what you just said is not true.
>
> [Gottlick's counsel]:  Okay, Your Honor.  Sorry.

A judge has the discretion to manage, evaluate, and screen the presentation of evidence to the jury, and while exercising that authority, he or she at times must rule that a witness's proposed testimony is irrelevant.  In the course of doing so, however, a judge must take care to avoid telegraphing to the

---

[1] The Court:  "You're mumbling, [counsel]."  The Court: "You're mumbling --" The Court: "Stop mumbling. Just show me the deposition."  The Court: "You're mumbling again."  The Court: "I can't hear you when you mumble, [counsel]." The Court: "You're mumbling."  The Court:  "What are you mumbling?"

A-5195-18

jury that he or she has opinions about the overall merits of a party's case and counsel's level of proficiency.

The judge was critical of defendants' counsel as well. The ratio of negative comments addressed to Gottlick's counsel and his proofs, however, greatly exceeds those addressed to defendants'. We cannot say absolutely that the judge's conduct predisposed the jury to find against Gottlick. But the jury could only have been left with the impression that the case was a waste of time that did not warrant much consideration. See Nagy, 382 N.J. Super. at 452.

The court repeatedly expressed concern over Gottlick's intent to offer "lots of emails" into evidence. Outside of the jury's presence, the court initially said, "I'll admit them if they're relevant and they're not repetitive, okay?" Later that day, the court informed Gottlick's counsel: "[We're] not going to go over 100 emails, okay? I'm not going to admit it. You have to be selective about what you're going to prove." After Gottlick's counsel argued the emails established his credibility, the court responded, "[Going] through 100 emails doesn't help evaluate the witness's credibility. He's on the witness stand. He's testifying." It is not clear if the judge had even looked at the emails prior to his ruling.

Gottlick's counsel said that "in those emails, you can see that he's complaining about the fact that he is being – I mean, it's a cumulative thing

19

where he is being belittled." The judge only responded that the rules of evidence permitted him to exclude cumulative evidence. This particular exchange ended with the judge asking Gottlick's counsel to "tighten up her emails . . . [so he could] review them and determine what's cumulative and what's repetitive and . . . what should go to the jury . . . ."

The judge sought repeatedly to narrow the inquiry to whether "there [were] improper, unlawful, age-related comments that led to [] a hostile work environment for [Gottlick]. That's the case." However correct that may have been in theory, in the process of limiting the proofs, he may have unwittingly prevented Gottlick from developing the very details necessary to prove the character of his work environment.

Venson, a named defendant, was Gottlick's supervisor and allegedly the source of the hostile work environment. Yet the court allowed Gottlick's counsel to pose only two or three questions to Venson, sua sponte in front of the jury rejecting all others on grounds of "irrelevance." The court's management of the questioning of this crucial witness alone may have "clearly [produced] an unjust result." Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018).

Gottlick's ability to flesh out the hostile work environment was impaired by the judge's stated concern about undue repetition and the consumption of

time.  Gottlick might have met his burden of proof by, for example, introducing the daily emails sent to the Director.  Gottlick might have been able to establish his case by the "cumulative effect of the various incidents . . . ."  <u>Lehmann v. Toys R Us, Inc.</u>, 132 N.J. 587, 607 (1993).

Gottlick's proofs may well fall short again.  Nonetheless, he is entitled to make the attempt in a neutral environment.  Accordingly, the judgment is vacated and the matter remanded for a new trial on the hostile work environment claim.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21